## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **KATHRYN M. FORREST, individually and on behalf of all others similarly situated,**<br>106 High Street<br>Bristol, RI 02809-2122 | Case No. |
| | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| **LARRY ROCKWELL II, individually and on behalf of all others similarly situated,**<br>311 East Lewis Street<br>Whitehall, MI 49461 | **DEMAND FOR JURY TRIAL** |
| **THOMAS LAMOUREUX, individually and on behalf of all others similarly situated,**<br>115 A&B Victory Street<br>Cumberland, RI 02864 | |
| and | |
| **SUSANA BONADONA, individually and on behalf of all others similarly situated,**<br>87-89 Hyacinth Street<br>Providence, RI 02094 | |
| Plaintiffs, | |
| v. | |
| **PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES,**<br>c/o Corporation Services Company<br>222 Jefferson Boulevard, Suite 200<br>Warwick, RI 02888 | |
| and | |
| **ACI WORLDWIDE CORP.**<br>c/o Corporation Services Company<br>222 Jefferson Boulevard, Suite 200<br>Warwick, RI 02888 | |
| Defendants. | |

Plaintiffs, Kathryn M. Forrest, Larry Rockwell II, Thomas Lamoureux, and Susana Bonadona, each individually and on behalf of all others similarly situated, by and through counsel, bring this action against Defendants PHH Mortgage Corporation d/b/a PHH Mortgage Services, and ACI Worldwide Corp. (collectively, "Defendants"), and state as follows for their Class Action Complaint:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Kathryn M. Forrest ("Forrest") is a natural person residing in Bristol, Rhode Island.

2.     Plaintiff Larry Rockwell II ("Rockwell") is a natural person residing in Muskegon County, Michigan.

3.     Plaintiff Thomas Lamoureux ("Lamoureux") is a natural person residing in Cumberland, Rhode Island.

4.     Plaintiff Susana Bonadona ("Bonadona") is a natural person residing in Providence, Rhode Island.

5.     Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH") is a corporation incorporated in the State of New Jersey and registered to do business in the State of Rhode Island, with its headquarters located at 1 Mortgage Way, Mount Laurel, New Jersey 08054.

6.     Defendant ACI Worldwide Corp. ("ACI") is a corporation incorporated in the State of Nebraska and registered to do business in the State of Rhode Island, with its principal place of business at 6060 Coventry Drive, Elkhorn, Nebraska 68022.

7.     Jurisdiction is proper in this Court under 28 U.S.C. § 1331 as some of the claims of Plaintiffs and of the Class arise under federal law, specifically the Fair Debt Collection Practices Act ("FDCPA")—codified as 15 U.S.C. §§ 1692, *et seq*.

8.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction to hear the state law claims brought under the Rhode Island Fair Debt Collection Practices Act("RIFDCPA")—codified as R.I. Gen. Laws § 19-14.9, *et seq*.

9.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred within the District of Rhode Island.

## CLASS ACTION ALLEGATIONS

10. **Class Definition**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals (the "Class"), defined as follows:

> All individuals in the United States for whom PHH acquired servicing rights for aresidential mortgage loan after the loan was in default, and who paid a convenience fee through the ACI Speedpay service in the process of remitting a payment on the loan.

> Excluded from the Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

11. **Subclass Definition**: Forrest, Lamoureux, and Bonadona also bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a subclass of similarly situated individuals (the "Subclass"), defined as follows:

> All individuals who own property in Rhode Island secured by a residential mortgage loan to which PHH acquired servicing rights after the loan was in default, and who paid a convenience fee through the ACI Speedpay service in the process of remitting a payment on the loan.
>
> Excluded from the Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

12. **Numerosity and Ascertainability**: Upon information and belief, the Class is comprised of more than forty (40) members, such that the Class is so numerous that joinder of all members is impractical. This conclusion is reasonable because as of March 31, 2020, Ocwen, the parent company of PHH, "serviced approximately $200 billion in unpaid principal balance ("UPB") of forward residential mortgages."[1] While the exact number of members in the Class is presently unknown and can only be ascertained through discovery, Class members can easily be identified through Defendants' records or by other means.

13. **Commonality and Predominance:** All members of the Class have been subject to and affected by a uniform course of conduct; specifically, ACI and PHH collecting

---

[1] *See*, Ocwen Financial Provides Company Update, https://www.globenewswire.com/news-release/2020/04/03/2011357/0/en/OCWEN-FINANCIAL-PROVIDES-COMPANY-UPDATE.html, April 3, 2020 (last accessed July 16, 2020).

impermissible Fees for remitting Loan payments through ACI Speedpay. There are questions of law and fact common to the proposed Class that predominate over any individual questions.

14.     **Typicality**: Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and Class members were each charged one or more impermissible Fees for remitting Loan payments through ACI Speedpay, and Plaintiffs and Class members incurred damages as a result.

15.     **Adequacy**: Plaintiffs will adequately represent the interests of the Class and do not have adverse interests to the Class. Plaintiffs' counsel has extensive experience litigating consumer class actions.

16.     **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual Class members prosecuted separate actions, it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct.

## STATEMENT OF FACTS

17.     Forrest, Rockwell, Lamoureux, and Bonadona (collectively, "Plaintiffs"), as well as each member of the Class (defined below), are each a "consumer" as defined by 15 U.S.C. § 1692a(3) and R.I. Gen. Laws § 19-14.9-3(1).As set forth below, Plaintiffs and Class members were each harmed by Defendants' violations of the FDCPA. Forrest, Lamoureux, Bonadona, and members of the Subclass were also harmed by Defendants' violations of the RIFDCPA. Plaintiffs and Class members thereforehave standing to bring this action under 15 U.S.C. §§ 1692, *et seq*. and R.I. Gen. Laws §§ 19-14.9-1, *et seq*.

18.     Plaintiffs and Class members are each obligated under one or more mortgage loans each secured by residential property (collectively, the "Loans"). Each of the Loans is a

"debt" as defined by 15 U.S.C. § 1692a(5) and R.I. Gen. Laws § 19-14.9-3(4), as each Loan is a residential mortgage loan with the primary purpose of each Loan being for personal, family, or household use.

19.    As a mortgage loan servicer, PHH—on behalf of other, third-party mortgagees to whom mortgage loan payments are ultimately due—regularly attempts to secure payments on customers' mortgage loans, including Plaintiffs' and Class members' Loans.

20.    When PHH acquired the servicing rights to each of Plaintiffs' and Class members' Loans, Plaintiffs and Class members were in default of their obligations thereunder.

21.    Accordingly, PHH is a "debt collector" as defined by 15 U.S.C. § 1692a(6) and R.I. Gen. Laws § 19-14.9-3(5), as it regularly engages, or attempts to engage, in the collection of "debts" for which the primary purpose is personal, family, or household use. Plaintiffs' and Class members' residential mortgage Loans are examples of "debts" PHH collected (or attempted to collect).

22.    ACI partners with various businesses—including PHH—to permit and effectuate bill payments over the telephone and the Internet.[2] ACI's "Speedpay" service is one of several bill payment/collection services marketed by ACI specifically to mortgage servicers, such as PHH.[3]

23.    In marketing its Speedpay service to mortgage servicers, ACI states that most customers "use multiple channels and payment types at different times and situations, and they

---

[2] ACI completed its acquisition of the Speedpay business service from Western Union Business Solutions (USA) LLC effective May 9, 2019. *See*, <u>ACI Worldwide Announces Completion of Acquisition of Speedpay – Western Union's U.S. Bill Pay Business: With Speedpay, ACI will expand its reach in the U.S. bill pay market</u>, https://www.aciworldwide.com/news-and-events/press-releases/2019/may/aci-worldwide-announces-completion-of-acquisition-of-speedpay-western-unions-us-bill-pay-business   (last accessed July 16, 2020).
[3] *See*, <u>Mortgage Services</u>, https://www.aciworldwide.com/industries/mortgage (last accessed July 16, 2020).

want a great experience across all channels," that "the entire process needs to be easy and intuitive to use," and that ACI's Speedpay service allows companies to "enhance customer satisfaction and loyalty while lowering the cost of payment collections and customer service."[4]

24.     ACI offers a selection of "ACI Speedpay Solutions Options" including "feature-rich web, mobile solutions, recurring, eBills, and expedited online bill pay" as well as payment channels including APIs, web, call center, in-person, IVR, mobile browser, text, email, point-of-sale, and mobile point-of-sale.[5]

25.     ACI describes Speedpay as "a holistic, comprehensive service" that includes "consumer marketing consultation and creative resources" to "produce superior adoption rates, giving clients faster [return on investment]."[6]ACI also states that its relationships with the debt collectors who utilize ACI's Speedpay service are "strategic partnerships" with a specific purpose: to "*maximiz[e] revenue* and retention while minimizing cost per customer."[7]One way ACI accomplishes its goal of increasing Speedpay customers' profits is by charging payors' transaction fees ("Fees") in connection with payments made though the Speedpay service, and then splitting those Fees with its customers.

26.     PHH utilizes ACI's Speedpay service in connection with its debt collection activities described above. Accordingly, ACI is also a "debt collector" as defined by 15 U.S.C. § 1692a(6) and R.I. Gen. Laws § 19-14.9-3(5) because it acted as the partner of debt collector PHH in facilitating PHH's debt collection activities.

---

[4]*See*, ACI Speedpay Solutions, https://www.aciworldwide.com/-/media/files/collateral/data-sheets/aci-speedpay-bill-payment-solution-us.pdf (last accessed July 16, 2020).
[5]*See*, id.
[6]*See*, id.
[7]*See*, id. (emphasis added).

27.     When Plaintiffs and each Class member attempted to remit payments for their respective Loans over the telephone or via the internet, PHH accepted and otherwise facilitated these payments through ACI's Speedpay service.

28.     When Plaintiffs and each Class member attempted to use the telephone or internet to remit payments to PHH relative to their Loans though the Speedpay service, ACI, individually, and on behalf of PHH, demanded that Plaintiffs and Class members each pay a Fee in connection with their use of the Speedpay service.

29.     Under both the FDCPA and RIFDCPA, debt collectors, such as ACI and PHH, are prohibited from charging debtors any amounts beyond their principal obligations, unless such additional amounts are" expressly authorized by the agreement creating the debt or permitted by law."15 U.S.C. § 1692f(1); R.I. Gen. Laws § 19-14.9-8(a).

30.     Plaintiffs' and Class members' Loans provide no authorization relative to Defendants' imposition and collection of the Fees, and there is no basis in law permitting Defendants to charge or collect the Fees. As such, Defendants were prohibited from charging the Fees, pursuant to the FDCPA and RIFDCPA.

31.     Since they each had a legal obligation to remit payments with respect to their Loans, Plaintiffs and Class members paid the Fees demanded by Defendants. Accordingly, Plaintiffs and Class members were harmed because they were required to pay, and did pay, Fees that were imposed in violation of the FDCPA and RIFDCPA.

32.     The FDCPA and RIFDCPA also prohibit debt collectors, such as ACI and PHH, from making false representations relative to "any…compensation that may be lawfully received by any debt collector for the collection of a debt."15 U.S.C. § 1692e(2)(B); R.I. Gen. Laws § 19-14.9-7(b)(2).The RIFDCPA further prohibits debt collectors, such as ACI and PHH, from

"representing that an existing obligation of a consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or charges, if in fact such fees or charges may not legally be added to the existing obligation." R.I. Gen. Laws § 19-14.9-8(i).

33.     In demanding that Plaintiffs and Class members pay the Fees, and actually imposing/collecting those Fees, ACI, individually, and on behalf of PHH, represented that those Fees were legally proper and could be imposed against Plaintiffs and Class members in connection with their Loan payments. Yet, as set forth above, both the FDCPA and RIFDCPA prohibited the imposition and collection of those fees.

34.     Accordingly, ACI, individually, and on behalf of PHH, misrepresented the fact that Plaintiffs' and Class members' Loan payments—*i.e.*, their existing payment obligations— could be increased by the imposition of the Fees, as well as the amount of compensation that Defendants could lawfully receive in connection with those Loan payments, in violation of the FDCPA and RIFDCPA. PHH knew of and authorized these misrepresentations.

35.     Based on those misrepresentations, Plaintiffs and Class members paid the Fees under the belief that they were properly imposed by Defendants. Had Plaintiffs and Class members known the truth, they would not have paid the Fees. Therefore, Plaintiffs and Class members were harmed by Defendants' violations of the FDCPA and RIFDCPA.

36.     After Plaintiffs and Class members paid the Fees, ACI remitted a portion of the Fees to PHH. Put another way, in collecting Fees from Plaintiffs and Class members, ACI collected money both on its own behalf and on behalf of PHH.

37.     Neither PHH nor ACI ever revealed to Plaintiffs, any Class member, or the public generally, that a portion of the Speedpay Fees that ACI collected from Plaintiffs and Class members would be (and was) remitted to PHH. In addition, Plaintiffs and Class members could

not have known of this remittance to PHH, even through diligent review of any Fees on their accounts.

38.     As a result, at the time they paid their respective Fees, Plaintiffs and Class members were unaware that a portion of those Fees was being remitted to PHH. For the reasons set forth below, Plaintiffs and Class members believed the opposite.

39.     If and when Plaintiffs and Class members remit Loan payments to PHH directly—*e.g.*, through a method other than the Speedpay service—they are not required to pay any Fees. In other words, the Fees are unique to Plaintiffs' and Class members' utilization of the Speedpay service.

40.     Since the Fees are unique to Speedpay, and because Plaintiffs' and Class members' use of the Speedpay service involves the inclusion of a "middleman"—*i.e.*, ACI— which would not be present if Plaintiffs and Class members remitted their Loan payments directly to PHH, Plaintiffs and Class members reasonably believed that the Fees were imposed solely for the purposes of covering the costs incurred by ACI in processing of their Loan payments. For the same reasons, Plaintiffs and Class members reasonably believed that the Fees they paid would be retained in their entirety by ACI.

41.     ACI and PHH knew of Plaintiffs' and Class members' reasonable beliefs on these points, yet, individually, and collectively, failed to disclose the fact that the Fees ACI collected were *not* solely for the purposes of processing Plaintiffs' and Class members' Loan payments, or that those Fees would be (and were)shared between ACI and PHH. As such, through these misrepresentations and omissions, Defendants, individually, and collectively, falsely represented the purpose of the Fees—and, by extension, the services they were providing in connection with

the collection of Plaintiffs' and Class members' Loans—as well as the amount of compensation that both Defendants would receive in connection with those services.

42.     Based on those misrepresentations, Plaintiffs and Class members paid the Fees under the belief that they were properly imposed by Defendants, and that the Fees were necessary to cover ACI's costs of processing their Loan Payments.[8]Had Plaintiffs and Class members known the truth, they would not have paid the Fees. Therefore, Plaintiffs and Class members were harmed as a result of Defendants' violations of the FDCPA and RIFDCPA.

### FACTS RELATIVE TO FORREST

43.     On November 3, 2006, Forrest entered into a mortgage loan with Option One Mortgage Corporation secured by her primary residence("Forrest's Loan").As such, at all times relevant, Forrest's Loan was a "debt" as defined by 15 U.S.C. § 1692a(5) and R.I. Gen. Laws § 19-14.9-3(4), as its primary purpose was for personal, family, or household use.

44.     Ocwen Loan Servicing LLC, which has since merged into PHH, obtained servicing rights to Forrest's Loan, and Forrest was in default on her obligations pursuant thereto at the time Ocwen Loan Servicing LLC obtained said servicing rights.

45.     On or about January 2, 2020, Forrest initiated a telephone call to PHH to remit the payment due on her Loan for January 1, 2020 in the amount of $1,986.60 using the Speedpay service ("Forrest's Loan Payment").

---

[8] Importantly, even if the Fees were imposed for the sole purpose of recouping ACI's costs relative to processing Plaintiffs' and Class members' Loan payments, they were still improperly imposed, as set forth *supra*.

46.    In connection with Forrest's Loan Payment, Defendants—individually and collectively—charged Forrest a $7.50Fee ("Forrest's Fee"), which Forrest paid.[9]*See*, a copy of a mortgage statement for Forrest's Loan dated January 2, 2020, attached as <u>Exhibit 1</u>.

47.    The express terms of Forrest's Loan did not (and do not) authorize Defendants to impose any such Fee in connection with Forrest's Loan Payment. As such, Forrest's Fee was imposed in violation of the FDCPA and RIFDCPA. 15 U.S.C. § 1692f(1); R.I. Gen. Laws § 19-14.9-8(a).

48.    For the reasons set forth above, Forrest reasonably believed her Fee was properly imposed, was solely for the purpose of covering ACI's costs of processing her January 2, 2020 Loan payment, and that her Fee would be retained solely by ACI (and would not be shared between Defendants).

49.    Had Forrest known that her Fee was improper, and/or that it was not for the purpose of covering the processing costs of her Loan payment, she would have not paid the Fee and would have attempted to submit her January 2, 2020 Loan payment in another manner.

50.    As a result of the foregoing, Forrest was harmed because she was required to, and did, pay the improperly imposed Fee.

### FACTS RELATIVE TO ROCKWELL

51.    On August 22, 2006, Rockwell entered into  a mortgage loan with MILA Inc., d/b/a Mortgage Investment Lending Associates, Inc., secured by his primary residence("Rockwell's Loan"). As such, at all times relevant, Rockwell's Loan was a "debt" as

---

[9]As set forth above, PHH explicitly authorized ACI to charge a Fee to Forrest, and ACI did so for the purpose of sharing that Fee between PHH and ACI. In other words, when ACI charged Forrest her Fee, it was doing so on behalf of itself, and PHH, collectively.

defined by 15 U.S.C. § 1692a(5), as its primary purpose was for personal, family, or household use.

52.     PHH obtained servicing rights to Rockwell's Loan effective April 1, 2019.

53.     As of April 1, 2019, Rockwell was in default on his obligations pursuant thereto. Specifically, Rockwell was due and owing for the February 1, 2019 payment on his Loan.

54.     On or about December 27, 2019, Rockwell initiated a telephone call to remit funds to PHH in the amount of $5,512.56, the amount necessary to reinstate his obligations on his Loan and additionally satisfy the amount due and owing for the January 1, 2020 payment ("Rockwell's Loan Payment").

55.     Because Rockwell was in default on his Loan, Rockwell was informed that the *only* way that Rockwell could submit his Loan payment electronically was through ACI's Speedpay service.

56.     In connection with Rockwell's Loan Payment, Defendants—individually and collectively—charged Rockwell a $17.50 Fee ("Rockwell's Fee"), which Rockwell paid.[10]*See*, correspondence from PHH dated May 6, 2020, attached as Exhibit 2.

57.     The express terms of Rockwell's Loan did not (and do not) authorize Defendants to impose any such Fee in connection with Rockwell's Loan Payment. As such, Rockwell's Fee was imposed in violation of the FDCPA. 15 U.S.C. § 1692f(1).

58.     For the reasons set forth above, Rockwell reasonably believed his Fee was properly imposed, was solely for the purpose of covering ACI's costs of processing his

---

[10]As set forth above, PHH explicitly authorized ACI to charge a Fee to Rockwell, and ACI did so for the purpose of sharing that Fee between PHH and ACI. In other words, when ACI charged Rockwell his Fee, it was doing so on behalf of itself, and PHH, collectively.

December 27, 2019 Loan payment, and that his Fee would be retained solely by ACI (and would not be shared between Defendants).

59.     Had Rockwell known that his Fee was improper, and/or that it was not for the purpose of covering the processing costs of his Loan payment, he would have not paid the Fee and would have attempted to submit his December 27, 2019 Loan payment in another manner.

60.     As a result of the foregoing, Rockwell was harmed because he was required to, and did, pay the improperly imposed Fee.

### FACTS RELATIVE TO LAMOUREUX

61.     On August 22, 2003, Lamoureux entered into a mortgage loan with Dream House Mortgage Corporation, secured by his primary residence("Lamoureux's Loan"). As such, at all times relevant, Lamoureux's Loan was a "debt" as defined by 15 U.S.C. § 1692a(5), as its primary purpose was for personal, family, or household use.

62.     Ocwen Loan Servicing LLC, which has since merged into PHH, obtained servicing rights to Lamoureux's Loan effective February 1, 2013.

63.     As of February 1, 2013, Lamoureux was in default on his obligations pursuant thereto. Specifically, Lamoureux was due and owing for the January 1, 2013 payment on his Loan.

64.     Throughout the past year, Lamoureux initiated telephone calls to PHH on the following dates to remit funds in the amounts due and owing to satisfy his monthly obligations on his Loan ("Lamoureux's Loan Payments")

    a.   September 12, 2019;

    b.   October 9, 2019;

    c.   November 8, 2019;

    d.  December 13, 2019;

    e.  January 10, 2020;

    f.  February 6, 2020; and,

    g.  March 30, 2020.

65.    In connection with each of Lamoureux's Loan Payments, Defendants—individually and collectively—charged Lamoureux a $7.50 Fee, seven (7) in total ("Lamoureux's Fees"), each of which Lamoureux paid.[11]*See*, a copy of mortgage statements for Lamoureux's Loan for the relevant months, attached as Composite Exhibit 3.

66.    The express terms of Lamoureux's Loan did not (and do not) authorize Defendants to impose any such Fee in connection with any of Lamoureux's Loan Payments. As such, each of Lamoureux's Fees was imposed in violation of the FDCPA and RIFDCPA. 15 U.S.C. § 1692f(1); R.I. Gen. Laws § 19-14.9-8(a).

67.    For the reasons set forth above, Lamoureux reasonably believed each of his Fees were properly imposed, was solely for the purpose of covering ACI's costs of processing each of Lamoureux's Loan Payments, and that each of his Fees would be retained solely by ACI (and would not be shared between Defendants).

68.    Had Lamoureux known that his Fees were improper, and/or that it was not for the purpose of covering the processing costs of his Loan payments, he would have not paid the Fees and would have attempted to submit his Loan payments in another manner.

69.    As a result of the foregoing, Lamoureux was harmed because he was required to, and did, pay the improperly imposed Fees.

---

[11]As set forth above, PHH explicitly authorized ACI to charge a Fee to Lamoureux, and ACI did so for the purpose of sharing that Fee between PHH and ACI. In other words, when ACI charged Lamoureux his Fee, it was doing so on behalf of itself, and PHH, collectively.

## FACTS RELEVANT TO BONADONA

70.     On March 16, 2006, Bonadona entered into a mortgage loan with Rose Mortgage, Inc., secured by her primary residence ("Bonadona's Loan"). As such, at all times relevant, Bonadona's Loan was a "debt" as defined by 15 U.S.C. § 1692a(5), as its primary purpose was for personal, family, or household use.

71.     Ocwen Loan Servicing LLC, which has since merged into PHH, obtained servicing rights to Bonadona's Loan effective February 4, 2013.

72.     As of February 4, 2013, Bonadona was in default on her obligations pursuant thereto. Specifically, Bonadona was due and owing for the January 1, 2013 payment on her Loan.

73.     On or about November 5, 2019, Bonadona initiated a telephone call to remit funds to PHH in an amount to satisfy her monthly periodic payment obligations on her Loan for the payment due and owing for November 1, 2019 ("Bonadona's Loan Payment").

74.     In connection with Bonadona's Loan Payment, Defendants—individually and collectively—charged Bonadonaa $7.50 Fee ("Bonadona's Fee"), which Bonadona paid.[12]*See*, copy of correspondence from NewRez dated, May 1, 2020 regarding Bonadona's Loan including the account statement for 2019 activity, attached as Exhibit 4.

75.     The express terms of Bonadona's Loan did not (and do not) authorize Defendants to impose any such Fee in connection with Bonadona's Loan Payment. As such, Bonadona's Fee was imposed in violation of the FDCPA and RIFDCPA. 15 U.S.C. § 1692f(1); R.I. Gen. Laws § 19-14.9-8(a).

---

[12]As set forth above, PHH explicitly authorized ACI to charge a Fee to Bonadona, and ACI did so for the purpose of sharing that Fee between PHH and ACI. In other words, when ACI charged Bonadona her Fee, it was doing so on behalf of itself, and PHH, collectively.

76.     For the reasons set forth above, Bonadona reasonably believed her Fee was properly imposed, was solely for the purpose of covering ACI's costs of processing her November 5, 2019 Loan payment, and that her Fee would be retained solely by ACI (and would not be shared between Defendants).

77.     Had Bonadona known that her Fee was improper, and/or that it was not for the purpose of covering the processing costs of her Loan payment, she would have not paid the Fee and would have attempted to submit her November 5, 2019 Loan payment in another manner.

78.     As a result of the foregoing, Bonadona was harmed because she was required to, and did, pay the improperly imposed Fee.

**COUNT I: AGAINST PHH AND ACI**
**VIOLATION OF THE FDCPA, 15 U.S.C. § 1692(f)**
**(On behalf of Plaintiffs and the Class)**

79.     Plaintiffs repeat and reallege paragraphs 1 through 78 with the same force and effect as though fully set forth herein.

80.     The FDCPA makes it an illegal, "unfair practice" for a debt collector to undertake "the collection of any amount (including any interest, fee, charge, or expense incidental to theprincipal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

81.     As the Fees charged by PHH and ACI are not authorized by the contract or any provision of law, their collection violates 15 U.S.C. § 1692f. *See Quinteros v. MBI Assocs.*, 999 F.Supp.2d 434 (E.D.N.Y. 2014) (finding that a $5.00 processing fee violated the FDCPA); *see also*, *McWhorter v. Ocwen Loan Servicing LLC*, NO. 2:15-CV-1831-MHH (N.D.Ala. Sept. 28, 2017).

82.     "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692(f).

83.     Courts have interpreted the FDCPA broadly, and it would be anomalous to conclude "any amount" does not encompass the processing fees at issue here. *See*, *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2nd Cir. 1989) ("It is clear that Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them."); *Quinteros,*999 F.Supp.2d at 438; *Acosta v. Credit Bureau of Napa County*, 2015 WL 1943244 at *4 (N.D. Ill. Apr. 29, 2015).

84.     Numerous states have issued administrative opinions and guidance that directly interpret the FDCPA, or otherwise have virtually identical language in state law,determining that the kind of Fees charged by Defendants areillegal. *See*, a memorandum constituting an advisory letter from North Carolina Assistant Attorney General Anne Goco Kirby, dated June 12, 2014, attached as <u>Exhibit 5</u>; an Advisory Opinion of the Administrator of the Colorado Collection Agency Board, dated December 27, 2006, attached as <u>Exhibit 6</u>; a letter from Wyoming Attorney General Bruce A. Salzburg to Rocklon L. Edmonds, Chairman of the Wyoming Collection Agency Board, dated March 15, 2010, attached as <u>Exhibit 7</u>.

85.     The Fees that ACI and PHH imposed against and collected from Plaintiffs and Class members for utilization of ACI Speedpay are not authorized by the terms of their Loans or otherwise by law.

86.     PHH and ACI violated the FDCPA by imposing and collecting the Fees for utilization of ACI Speedpay when such Fees are not authorized by the terms of their Loans or otherwise by law

87.     Moreover, ACI actively participated further in such violations of the FDCPA, as well as the concealment of the violations, by charging the unauthorized ACI Speedpay Fees, "kicking back "a significant portion of the Fees to PHH, and not disclosing such "kickbacks" to Plaintiffs or Class members.

88.     As a result of the actions of PHH and ACI, PHH and ACI are each liable to Plaintiffs and Class members for actual damages, statutory damages, costs, and attorney fees. 15 U.S.C. § 1692k.

### COUNT II: AGAINST PHH AND ACI
### VIOLATION OF THE RHODE ISLAND FAIR DEBT COLLECTION PRACTICES ACT, R.I. Gen. Laws §§ 19-14.9-8(a) and (i)
### (On behalf of Forrest, Lamoureux, Bonadona, and the Subclass)

89.     Plaintiffs repeat and reallege paragraphs 1 through 78 with the same force and effect as though fully set forth herein.

90.     "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Such unfair or unconscionable means shall include, but not be limited to: (a) Collecting any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law…(i) Representing that an existing obligation of a consumer may be increased by the addition of attorney's fees, investigation fees, service fees, or any other fees or

charges, if in fact such fees or charges may not legally be added to the existing obligation."R.I. Gen. Laws § 19-14.9-8.

91.     The Fees that ACI and PHH imposed against and collected from Forrest, Lamoureux, Bonadona, and Subclass members for utilization of ACI Speedpay are not authorized by the terms of their Loans or otherwise by law.

92.     PHH and ACI violated the RIFDCPA,R.I. Gen. Laws § 19-14.9, *et seq.*, by imposing and collecting the Fees for utilization of ACI Speedpay when such Fees are not authorized by the terms of their Loans or otherwise by law, and by representing that the debt evidenced by each of the Loans may be increased by the addition of such Fees when such Fees or charges may not be added to the existing obligation.

93.     Moreover, ACI actively participated further in such violations of the RIFDCPA, as well as the concealment of the violations, by charging the unauthorized ACI Speedpay Fees, "kicking back" a significant portion of the Fees to PHH, and not disclosing such "kickbacks" to Forrest, Lamoureux, Bonadona,or Subclass members.

94.     As a result of the actions of PHH and ACI, PHH and ACI are each liable to Forrest, Lamoureux, Bonadona, and Subclass members for actual damages, statutory damages, costs, and attorneys' fees. R.I. Gen. Laws § 19-14.9-13.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Kathryn M. Forrest, Larry Rockwell II, Thomas Lamoureux, and Susana Bonadona, each individually, and on behalf of the Class and Subclass, pray for an Order as follows:

A.     Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class and Subclass as defined herein;

B.     Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C.      Designating Forrest, Lamoureux, and Bonadona as representatives of the Subclass and their undersigned counsel as Counsel for the Subclass;

D.      Entering judgment in favor of Plaintiffs and the Class nd against Defendants PHH and ACI, jointly and severally;

E.      Entering judgment in favor of Forrest, Lamoureux, Bonadona, and the Subclass and against Defendants PHH and ACI, jointly and severally;

F.      Awarding Plaintiffs and the Class their actual damages and statutory damages as allowed under the FDCPA;

G.      Awarding Forrest, Lamoureux, Bonadona, and the Subclass their actual damages and statutory damages as allowed under the RIFDCPA;

H.      Awarding Plaintiffs, the Class, and Subclass attorneys' fees and costs, including interest thereon, as allowed or required by law; and

I.      Granting all such further and other relief as this Court deems just and appropriate.


Respectfully submitted,

July 24, 2020

/s/ John B. Ennis

John B. Ennis, Esq. #2135

1200 Reservoir Avenue
CRANSTON, RI 02920
Telephone: (401) 943-9230
Facsimile: (401)679-0035
Jbelaw75@gmail.com



Marc E. Dann

(*pro hac vice anticpated*)
mdann@dannlaw.com
notices@dannlaw.com
DannLaw
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539

Facsimile: (216) 373-0536

Thomas A. Zimmerman, Jr.
(*pro hac vice* anticipated)
tom@attorneyzim.com
Matthew C. De Re
(*pro hac vice* anticipated)
matt@attorneyzim.com

Sharon Harris
(*pro hac vice* anticipated)
sharon@attorneyzim.com
Zimmerman Law Offices, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180

*Counsel for Plaintiffs and the Class*

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues so triable.

s/ John B. Ennis

John B. Ennis, Esq. #2135

1200 Reservoir Avenue
CRANSTON, RI 02920
Telephone: (401) 943-9230
Facsimile: (401)679-0035
Jbelaw75@gmail.com